**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**(Alexandria Division)**

| | | |
|---|---|---|
| **Emanuel Maniatis** | : | |
| Plaintiff | : | |
| **v.** | : | **Case No.: 1:13-cv-01562-GBL-TCB** |
| **Specialized Loan Servicing, LLC** | : | |
| Defendant | : | |

---

## MEMORANDUM OF LAW

---

The Defendant, Specialized Loan Servicing, LLC ("SLS"), by and through its attorneys, Aaron D. Neal and McNamee, Hosea, Jernigan, Kim, Greenan & Lynch, P.A., submits this memorandum of law in support of its motion to dismiss the Plaintiff's Complaint, and says:

## I.    OVERVIEW.

Plaintiff's Complaint arises from a series of alleged accounting errors with respect to the servicing of his home equity line of credit.  Plaintiff avers that his payments were supposed to be $669.07 per month for five years and that SLS demanded a higher monthly payment before the 5 year period of modified payments expired.  Notably, Plaintiff admits that he was required to make monthly payments and does not aver that he paid one penny more than he claims to have owed on the mortgage loan due to any actions of SLS.  Plaintiff has not pled the one element that is a prerequisite for all of his claims – damages.  What Plaintiff really seeks – or should be seeking if he believes there has been an accounting error – is an accounting.  Instead, Plaintiff seeks nearly $10 million in damages from SLS, despite having alleged no actual damages.  For that reason, the Plaintiff's claims must be dismissed, with prejudice.

## II.    FACTS ALLEGED IN THE COMPLAINT.

SLS is the current servicer for a Home Equity Line of Credit (the "HELOC") obtained by the Plaintiff in 2004.[1] *See* Complaint at ¶1-7.  In 2010, the HELOC was apparently modified through a "Modification of Home Equity Line of Credit Agreement". Id. at ¶8.  After the modification, Plaintiff was required to make payments of $669.08 each month for 60 months. Id. In 2012, SLS notified Plaintiff that the HELOC had been transferred to SLS for servicing. Id. at ¶9.  That notice indicated that SLS was committed to courteous, accurate service. Id.  The notice also confirmed that the terms of the HELOC were not changing due to the servicing transfer. Id.

SLS accepted Plaintiff's first payment of $680.00 on March 14, 2012. Id. at ¶11. Plaintiff has made the HELOC payments each and every month. Id. at ¶12.  In mid-2012, SLS advised Plaintiff that some of his payments had been incorrectly posted but that the account had been corrected. Id. at ¶14-15.  In May 2013, SLS advised Plaintiff that the amount due was $1,907.55 instead of $669.07. Id. at ¶16.  In a July 2013 letter, SLS acknowledged that the monthly payment was $669.07 and that the loan was current and due for the September 2013 payment. Id. at ¶18.  From August through October of 2012, SLS sent payment notices indicating that approximately $1,900.00 was owed rather than $669.07. Id. at ¶20-22.  At all times in 2013, Plaintiff made timely payments of not less than $669.07 per month. Id. at ¶22. Exhibit 3 to the complaint shows that Plaintiff made payments in the amount of $680.00 per month from August through November of 2013. Id. at ¶22 & 26.

On October 29, 2013, SLS sent Plaintiff a notice of default relating to the September 8, 2013 payment. Id. at ¶25.  Plaintiff has, through counsel, sent two dispute letters to SLS. Id. at

---

[1] SLS is restating the allegations of the Complaint herein as if they are true, pursuant to the Rule 12(b)(6) standard. In doing so, SLS does not waive the right to contest the accuracy or veracity of any and all allegations of the Complaint at any stage of this litigation, and SLS specifically reserves the right to so contest said allegations.

¶27-29.  As of the date of the filing of the Complaint (December 2, 2013), SLS had not
responded to the dispute letter dated November 26, 2013.

**III.    STANDARD.**

      A.     RULE 12(b)(6).

In the context of a Rule 12(b)(6) motion to dismiss, the Court must accept all well-pled
facts as true and construe those facts in the light most favorable to the plaintiff. Nemet Chevrolet,
Ltd. v. Consumeraffairs.com, 591 F.3d 250, 255 (4th Cir. 2009); *See also* Ashcroft v. Iqbal, 129
S.Ct. 1937, 1950-51 (2009); Adcock v. Freightliner, LLC, 550 F.3d 369, 375 (4th Cir. 2008).
"[L]egal conclusions, elements of a cause of action, and bare assertions devoid of further factual
enhancement fail to constitute well-pled facts for Rule 12(b)(6) purposes." Id.; *See* Iqbal, 129
S.Ct. at 1949.  The Court may not consider "unwarranted inferences, unreasonable conclusions,
or arguments." Id.; *quoting* Wahi v. Charleston Area Med. Ctr., Inc., 562 F.3d 599, 615 n.26 (4th
Cir. 2009); *See also* Iqbal, 129 S.Ct. at 1951-52.  The allegations in the Complaint "must
produce an inference of liability strong enough to nudge the plaintiff's claims 'across the line
from conceivable to plausible.'" Id. at 256; *quoting* Iqbal, 129 S.Ct. at 1952 (*quoting* Bell
Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).

      B.     RULE 9(b).

Allegations of fraud are held to a higher standard than other claims.  "In alleging fraud or
mistake, a party must state with particularity the circumstances constituting fraud or mistake."
Carlucci v. Han, 886 F.Supp.2d 497, 509 (E.D. Va. 2012); *quoting* Fed. R. Civ. P. 9(b).  To
satisfy the heightened standard for pleading fraud, the plaintiff must state, with particularity, "the
time, place, and contents of the false representations, as well as the identity of the person making

the misrepresentation and what he obtained thereby." Id.; *quoting* In re Mut. Funds Inv. Litig., 566 F.3d 111, 120 (4th Cir. 2009) (citations omitted).

## IV.   ARGUMENT.

### A.   PLAINTIFF HAS NOT IDENTIFIED ANY CONTRACTUAL RELATIONSHIP WITH SLS OR DAMAGES UPON WHICH A BREACH OF CONTRACT CLAIM COULD BE BASED.

The cornerstones of any breach of contract claim are the existence of a contract and a breach of the terms thereof.  Plaintiff has failed to allege the existence of a contractual relationship with SLS and has not identified the terms of any contract which he contends SLS has breached.  Plaintiff appears to be basing his contractual claim on a February 9, 2012 letter from SLS indicating that it was servicing the HELOC.  Said letter does not contain an offer of performance by SLS and there is no indication that Plaintiff indicated his acceptance of any such offer.  Quite simply, Plaintiff has failed to identify a contractual relationship from which liability for a breach of contract could arise.

The elements of a claim for breach of contract are well settled: "(1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of that obligation." Ulloa v. QSP, Inc., 271 Va. 72, 79-80 (2006); *quoting* Filak v. George, 267 Va. 612, 619 (2004); *See* Marsteller v. ECS Federal, Inc., 2013 WL 4781786 (E.D. Va. 2013).  An enforceable contract must be made on the "mutual assent of the contracting parties to terms reasonably certain under the circumstances." Cyberlock Consulting, Inc. v. Information Experts, Inc., 876 F.Supp.2d 672, 678 (E.D. Va. 2012); *quoting* Allen v. Aetna Cas. & Sur. Co., 222 Va. 361, 364 (1981).  The alleged contract must contain the "mutual commitment by the parties" to undertake some action or obligation. Beazer Homes Corp. v. VMIF/Anden Southbridge Venture, 235 F.Supp.2d 485, 491-

91 (E.D. Va. 2002). A contract requires an offer, acceptance and consideration. Snyder-Falkinham v. Stockburger, 249 Va. 376, 381 (1995). A valid offer "identifies the bargained for exchange." Chang v. First Colonial Sav. Bank, 242 Va. 388, 392 (1991). "[T]he major consideration underlying contract law is the protection of bargained for expectations." Filak, 267 Va. at 618j.

None of the elements of a contract are present with respect to the letter which Plaintiff calls a contract. The letters put forth by Plaintiff as a "contract" merely state that SLS is "committed" to accurately servicing the Plaintiff's loan. There is no promise or offer to do so, merely a blanket statement of SLS's commitment to doing so. There are no facts showing that Plaintiff accepted any offer from SLS or provided consideration in return for any offer. The letter does not request consideration and does not promise performance. The letter does not explain how the Plaintiff would go about accepting the non-existent offer to perform. It is abundantly clear that the February 2012 letter from SLS to the Plaintiff was not a contract and is not enforceable as a contract.

Plaintiff also attempts to refer to Exhibit 4 to his Complaint, another letter, as evidence of a "promise" by SLS to perform. Disregarding the lack of any allegation of acceptance, that letter also contains no promises by SLS. The letter at Exhibit 4 simply states that the account has been corrected. The letter is a statement of present fact, not a promise of future performance. Again, there is no offer of performance, no acceptance by the Plaintiff of any offer, and no consideration for any promise to perform. Exhibit 4 does not, in any way, shape or form, create a contractual relationship.

Plaintiff has also failed to plead damages arising from the "breach" of the letters. The only conceivable damage that one could suffer due to the alleged breach of an obligation of

5

accurate accounting of loan payments would be paying the erroneously quoted amount and thus paying more than is required.  Plaintiff admits that he was required to make monthly payments.  Plaintiff admits that he made monthly payments in the amounts required.  Plaintiff does not allege that he paid the amounts allegedly demanded by SLS and actually appends his own bank statements showing that he did not pay the amounts demanded.  Perhaps most importantly, Plaintiff does not allege that the loan has been paid off.  Thus, even if Plaintiff paid more than the proper monthly payment, he would not have suffered damages, **because he owed the money** and would have had to pay the entire balance sooner or later.  Mistakenly paying a loan down earlier than required is not a loss.  There is simply no allegation that Plaintiff suffered any damages due to SLS's alleged breach and it does not seem likely that Plaintiff could make such an allegation, as he does not claim to have paid the loan off entirely.

Absent an enforceable contract between the parties Plaintiff or damages arising from a breach thereof, Plaintiff cannot bring a claim for breach of contract.  The letters from SLS are the only "contracts" identified by Plaintiff in Count 1 of his Complaint.  *See* Compl. at ¶31-40.  Those letters are not contracts.  Plaintiff has failed to plead the existence of a contract or any corresponding contractual duties.  Plaintiff has also failed to plead any damages.  As such, Plaintiff's breach of contract claim fails and must be dismissed.

> B.    ALL OF THE PLAINTIFF'S TORT CLAIMS ARE BARRED BY THE ECONOMIC LOSS RULE.

The Plaintiff's Complaint is vague in its description of damages and nowhere does it allege a personal injury.  It is hard to conceive of a circumstance in which the accounting of mortgage payments would somehow create a personal injury.  *See* Asafo-Adeji v. First Sav. Mortg. Corp., 2010 WL 730365 (D. Md. 2010) ("[T]he Court cannot imagine *any* set of facts surrounding a mortgage transaction that would support an inference of extreme and outrageous

conduct.").  Absent a personal injury or privity of contract, Plaintiff cannot sustain any tort claims due to Virginia's application of the economic loss rule. Crawford v. Deutsche Bank AG, 244 F.Supp.2d 615, 617 (E.D. Va. 2003); Gerald M. Moore and Son, Inc. v. Drewry, 251 Va. 277, 279 (1996); Sensenbrenner v. Rust, Orling & Neale, Architects, Inc., 236 Va. 419, 424-25 (1988).  Recovery for strictly economic losses is limited to the law of contracts in Virginia. Sensenbrenner, 236 Va. at 424-25.

> The controlling policy underlying tort law is the safety of persons and property – the protection of persons and property from losses resulting from injury.  The controlling policy consideration underlying the law of contracts is the protection of expectations bargained for.  If that distinction is kept in mind, the damages claimed in a particular case may be more readily classified between claims for injuries to persons or property on one hand and economic losses on the other.
>
> Sensenbrenner, 236 Va. at 425.

Where a plaintiff alleges nothing more than economic damages, the plaintiff's sole remedy is under the law of contracts. Id.  "Recovery in tort is available only where there is a breach of a duty 'to take care for the *safety* of the person or property of another.'" Id.; *quoting* Blake Construction Co. v. Alley, 233 Va. 31, 34 (1987) (emphasis in original).

In this case, Plaintiff alleges nothing more than economic loss and does not precisely explain what economic loss he has suffered.  There are no allegations that Plaintiff has suffered any personal injury due to any act or omissions of SLS.  Furthermore, Plaintiff has not alleged any contractual privity between himself and SLS upon which he could claim an exemption from the economic loss rule.  Having failed to plead any personal injury, all of Plaintiff's tort claims – Counts 4 through 7 – must be dismissed under the economic loss rule.

C.      PLAINTIFF HAS NOT PLED ANY DAMAGES ARISING FROM ALLEGED
        NEGLIGENCE OF SLS.

The elements of a claim for negligence in Virginia are well settled: "(1) the identification of a legal duty of the defendant to the plaintiff; (2) the breach of that duty; and (3) injury to the plaintiff proximately caused by the breach." Talley v. Danek Medical, Inc., 179 F.3d 154, 157 (4th Cir. 1999); See Locke v. Johns-Manville Corp., 221 Va. 951 (1981).  Plaintiff asserts that SLS was negligent in sending allegedly inaccurate account statements.  Notably absent from Plaintiff's claim is any allegation of injury proximately caused by said statements.  In fact, Plaintiff makes it clear that he did not pay the amounts claimed by SLS, but rather continued paying as he always had, in the amount of $680.00 per month.

If Plaintiff's allegations are assumed true, he did not pay any more to SLS than he would have otherwise and he knew at all times what the appropriate monthly payment amount was. The only conceivable damage that one could suffer due to the allegedly negligent accounting of loan payments would be paying the erroneously quoted amount and thus paying more than is required.  Plaintiff admits that he was required to make monthly payments.  Plaintiff admits that he made monthly payments in the amounts required.  Plaintiff does not allege that he paid the amounts allegedly demanded by SLS and actually appends his own bank statements showing that he did not pay the amounts demanded.  Perhaps most importantly, Plaintiff does not allege that the loan has been paid off.  Thus, even if Plaintiff paid more than the proper monthly payment, he would not have suffered damages as he owed the money and would have had to pay the entire balance sooner or later.  Mistakenly paying a loan down earlier than required is not an economic loss.  There is simply no allegation that Plaintiff suffered any damages due to SLS's alleged negligence and it is not likely that Plaintiff could make such an allegation, as he does not claim to have paid the loan off entirely.  As such, Plaintiff's negligence claim must be dismissed.

D.     THE PLAINTIFF HAS NOT PLED ANY DAMAGES OR RELIANCE WITH
       RESPECT TO HIS CONSTRUCTIVE OR ACTUAL FRAUD CLAIM.

"Constructive fraud requires proof, also by clear and convincing evidence, 'that a false

representation of a material fact was made innocently or negligently, and the injured party was

damaged as a result of…reliance upon the misrepresentation'." Richmond Metropolitan

Authority v. McDevitt Street Bovis, Inc., 256 Va. 553, 558 (1998); *quoting* Mortarino v.

Consultant Eng'g Serv., 251 Va. 289, 295 (1996).  Similarly, a claim for actual fraud is

predicated on the plaintiff taking action in reasonable reliance upon the alleged misrepresentation

of the defendant. Sherman v. Litton Loan Servicing, LP, 796 F.Supp.2d 753 (E.D. Va. 2011).

Absent allegations of reliance, a party cannot recover damages for constructive or actual fraud.

Bank of America, N.A. v. Sands, 488 Fed.Appx. 704, 709 (4th Cir. 2012).  Here, the Plaintiff

cannot recover because he clearly and repeatedly states that he never believed he was in default,

never paid the amounts allegedly demanded by SLS, and never took any action in reliance upon

any statements by SLS.

Plaintiff has failed to plead any facts which would even infer that he took some action in

reliance upon the alleged misrepresentations of SLS.  Rather, if Plaintiff's allegations are

assumed true, he did not pay any more to SLS than he would have otherwise and he knew at all

times what the appropriate monthly payment amount was.  The only conceivable action that one

could take in reasonable reliance on an alleged misrepresentation of the necessary monthly

payment would be paying the erroneously quoted amount and thus paying more than is required.

Plaintiff admits that he was required to make monthly payments.  Plaintiff admits that he made

monthly payments in the amounts required.  Plaintiff does not allege that he paid the amounts

allegedly demanded by SLS and actually appends his own bank statements showing that he did

not pay the amounts demanded.  There is simply no allegation that Plaintiff took any action in reliance upon SLS's alleged misrepresentations.

Furthermore, Virginia is in the minority of states that require the higher standard of "reasonable reliance" to establish fraud. White v. Potocska, 589 F.Supp.2d 631, 650 fn.18 (E.D. Va. 2008); *quoting* Field v. Mans, 516 U.S. 59, 72 (1995); *see* Horner v. Ahern, 207 Va. 860, 863-64 (1967).  "Justifiable reliance and reasonable reliance are not the same thing." Id. "Reliance that is justifiable might not be reasonable", as reasonable reliance is a higher standard than justifiable reliance. Id.  The Virginia Supreme Court in Horner defined reasonable reliance as follows:

> Where ordinary care and prudence are sufficient for full protection, it is the duty of the party to make use of them.  Therefore, if false representations are made regarding matters of fact, and the means of knowledge are at hand and equally available to both parties, and the party, instead of resorting to them, sees fit to trust himself in the hands of one whose interest it is to mislead him, **the law, in general, will leave him where he has been placed by his own imprudent confidence**.
>
> Horner v. Ahern, 207 Va. 860, 863-64 (1967) (emphasis added); *quoting* Costello v. Larsen, 182 Va. 567, 571 (1944); *see* Cooley on Torts, p. 487.

Here, there could never be any reasonable reliance by Plaintiff upon any alleged misrepresentation by SLS regarding the amount of the monthly payment.  Plaintiff's complaint goes into great detail (even attaching a copy) regarding the terms of the modification agreement and the resulting affect on Plaintiff's required monthly payments and the duration for which that monthly payment would apply.  Plaintiff knew at all times the amount of his monthly loan payment.  Thus, even if Plaintiff had acted in reliance upon SLS's alleged misrepresentations (which he did not) and made payments higher than that which he believes is owed, such action would not be in **reasonable reliance** upon any statement by SLS.  The facts necessary for the Plaintiff to determine the amount of his monthly payments are and always have been, according

to the complaint, in his possession.  Plaintiff clearly alleges that he knew that what SLS was allegedly misrepresenting was, in fact, false.  Plaintiff could not reasonably rely upon any representation that he knew was false, and even if he was somehow confused about the truth of the representation, "the means of knowledge are at hand and equally available to both parties" and he could not reasonably rely upon any statement by SLS regarding his proper monthly payment. Horner, 207 Va. At 863-64.

Furthermore, Plaintiff has failed to plead any actual damages arising from the alleged fraud or constructive fraud.  As stated more fully *supra*, Plaintiff admits that he did not overpay on his mortgage due to any alleged misrepresentation.  Plaintiff admits that he owed money and admits that he paid the amount he claims was owed each month, nothing more.  Furthermore, even if the Plaintiff had overpaid on a monthly basis due to any statement of SLS, he would not suffer any damages unless he paid SLS more than the outstanding loan balance.  Again, Plaintiff admits that he was required to make payments and admits that he paid the amount owed on a monthly basis.  There is no allegation that anything SLS did relieved the Plaintiff of his obligation to pay.  As such, Plaintiff has not pled any damages as he did not pay anything that he was not legally obligated to pay.

Finally, if attempted fraud was a cognizable cause of action, perhaps the Plaintiff would have pled a valid claim in his Complaint.  Unfortunately for the Plaintiff, attempted fraud is not a recognized civil cause of action.  Actual and constructive fraud, which are causes of action, require the pleading of reliance upon a misrepresentation and resulting damages.  Thus, even if the Plaintiff could adequately plead the other elements that precede reliance and damages, the inability to show those final elements render the Plaintiff's fraud claims inadequate.  As the

11

Plaintiff has not pled and cannot plead all of the elements of actual or constructive fraud, his fraud claims must be dismissed.

> E.     THE TORT OF CONVERSION DOES NOT APPLY TO MONEY.

"The general rule in Virginia is that "money cannot be subject to conversion, only tangible personal property may be converted." Jones v. Bank of America Corp., 2010 WL 6605789, *4-5 (E.D. Va. 2010); *quoting* Arias v. Jokers wild, Inc., 73 Va. Cir. 281, 2007 WL 6013198, *13 (Va. Cir. Ct. May 2, 2007).  "[A]t common law, money could be converted so long as 'it was in a bag or chest.'" Id.; *quoting* Golden v. Chaplin, 2009 WL 2844414 (Va. Cir. Ct. July 17, 2009).  Money can only be the subject of a conversion claim if it is in the form of a separately identifiable fund, such as a bag of money or identifiable settlement proceeds segregated from other funds. Id.  Plaintiff has not alleged that SLS is holding any of his funds in a bag or in some separate, segregated account.  To fall under the exception to the general rule, that money cannot be converted, Plaintiff must allege that the funds for which he seeks the return are somehow segregated from other funds.  Plaintiff has not made any such allegation and thus his conversion claim is barred by the general rule that money cannot be converted.

More importantly, in order to plead a claim for conversion, the Plaintiff must show that he is entitled to immediate possession of the funds which he demands be returned. Id. at *5-6. Plaintiff admits that he was required to make payments to SLS.  Plaintiff admits that he did not overpay SLS based on the alleged misrepresentations of SLS.  The funds in question were paid by Plaintiff pursuant to his contractual obligation in the HELOC.  Absent a contractual or common law right to the return of those loan payments, which has not been alleged, Plaintiff is not entitled to the return of his funds and thus cannot sustain a claim for conversion.

While the Virginia case law on this issue is sparse, the Maryland courts take a similar approach to conversion and have analyzed it more in depth in this particular circumstance.  In Maryland, as in Virginia and many other jurisdictions, conversion does not apply to money, as money is intangible. <u>Allied Inv. Corp. v. Jasen</u>, 354 Md. 547, 565 (1999) (citations omitted). The exception to the rule in Maryland, like Virginia, is where there are specifically identifiable funds are maintained in a separate, segregated account – the equivalent of the "bag of money" discussed in <u>Jones</u>, *supra*. <u>Id</u>. at 565-67; <u>Darcars Motors of Silver Spring, Inc. v. Borzym</u>, 379 Md. 249 (2004); <u>IFast, Ltd. v. Alliance for Telecommunications Industry Solutions, Inc.</u>, 2007 WL 3224582 (D. Md. 2007).  Again, absent an allegation that SLS is holding specifically identifiable funds to which the Plaintiff is entitled in a separate, segregated account, the Plaintiff cannot sustain his claim for conversion.  The Plaintiff has not alleged that he is entitled to immediate possession of a specific sum of money that is in SLS's possession in a specific, segregated account.  As such, Plaintiff has not pled a viable claim for conversion and said claim must be dismissed.

F.     PLAINTIFF HAS NOT SUFFICIENTLY PLED HIS ASSUMPSIT CLAIM, AS HE ADMITS THAT HE OWED THE MONEY THAT WAS PAID TO SLS.

In order to sustain a claim for assumpsit relating to money, a subset of assumpsit claims known as *indebitatus assumpsit*, "it is necessary for the plaintiff to establish an express contract or facts and circumstances from which the law will raise an implication of a promise to pay." <u>Raven Red Ash Coal Co. v. Ball</u>, 185 Va. 534, 541 (1946); <u>Lawson's Executor v. Lawson</u>, 57 Va. 230, 232 (1861).  Assumpsit is only a viable cause of action when one party has "illegally seized" the personal property of another. <u>Id</u>. at 540-41.  The facts pled in the Complaint do not support the existence of a promise by SLS to pay Plaintiff, or that SLS illegally seized any personal property of Plaintiff.

13

As is stated more fully above, the facts pled in the Complaint show that Plaintiff was under a contractual obligation to make payments on the HELOC.  Those same factual allegations show that Plaintiff has not overpaid SLS as a result of any alleged misrepresentation of SLS. Quite simply, Plaintiff has paid the amount he alleges that he owes under the HELOC and he is not entitled to the return of his loan payments due to any of the allegations in the Complaint.  As there has been no illegal seizure, Plaintiff cannot obtain the return of funds which he admits were paid in accordance with his obligations under the HELOC.  Plaintiff has not established any obligation to pay on the part of SLS and has not established that SLS's receipt of his mortgage payments was in any way illegal or improper.  Plaintiff's claim for assumpsit fails and must be dismissed.

      G.     <u>PLAINTIFF HAS NOT PLED A CLAIM FOR SLANDER OF TITLE</u>.

The claim of slander of title has been defined in this Court as requiring: "(1) the uttering and publication of the slanderous words by the defendant, (2) the falsity of the words, (3) malice, (4) and special damages." <u>Neil v. Wells Fargo Bank, N.A.</u>, 2013 WL 4782030, *2 (E.D. Va. 2013); <u>Brown v. HSBC Mortg. Corp.</u>, 2011 WL 3101780, *5 (E.D. Va. 2011); *quoting* <u>Warren v. Bank of Marion</u>, 618 F.Supp. 317, 320 (W.D. Va. 1985).  Typically, slander of title is litigated in the context of the recording of a false land instrument or a statement regarding the use or value of real property which prevents the plaintiff from consummating a transaction involving the subject real property. <u>Id</u>.; *See* <u>Whildin v. Kovacs</u>, 82 Ill.App.3d 1015 (1980); <u>Wright v. Castles</u>, 232 Va. 218 (1986); <u>Donohoe Const. Co. v. Mount Vernon Associates</u>, 235 Va. 531 (1988). This is not the typical case, as there is no allegation that SLS recorded a false land instrument, made statements regarding the use or value of the Plaintiff's property, or prevented the Plaintiff

from consummating any transaction involving his property.  Viewed generally in light of typical slander of title cases, this is not a case in which slander of title is an applicable claim.

Analyzing the elements of the cause of action with respect to the facts brings the same result.  This is not a slander of title case.  The first and second elements require, quite obviously, the publication of false words to third parties.  The only alleged statement or "publication" by SLS was the sending bills and statements to Plaintiff that were allegedly false. Compl. at ¶76-82.  There is no identification of any third party to whom SLS published the bills and statements.  In fact, the Plaintiff specifically states that the "publication" in question was made only to the Plaintiff: "SLS deliberately, intentionally and recklessly continued to send false, misleading and erroneous bills to the Plaintiff, causing damages to him". Id. at ¶82.  The Plaintiff does not identify any documents recorded in the Land Records by SLS or any statement sent to a third party.  Quite simply, the Plaintiff does not allege that SLS published any false statements.

There is also no allegation that any words "published" by SLS were slanderous with respect to Plaintiff's property.  Plaintiff does not even attempt to explain how a notice of default or allegedly inaccurate account statement would disparage the title to his property.  Whether or not the Plaintiff is current on his mortgage has nothing to do with the value or quality of his property, or the Plaintiff's ability to alienate same.  Slander of title is an "aspersion upon one's property, rather than one's person." Warren, 618 F.Supp. at 320.  This is not a case where a false deed or false lien has been recorded that would prevent Plaintiff from passing marketable title.  Rather, this is the case of a private communication from SLS to Plaintiff regarding the status of his mortgage loan.  Nothing about that communication cast any aspersion on the value or quality of the Plaintiff's property interest.

15

Perhaps most importantly, Plaintiff has not alleged any special damages. In the context of slander of title, special damages arise when a third party refuses to deal with the plaintiff with respect to the property due to the slanderous statements of the defendant. Id. Personal damages, such as emotional distress, are not recoverable in a slander of title action. Rite Aid Corp v. Lake Shore Investors, 298 Md. 611, 623 (1984); Prosser, *The Law of Torts*, §128, p.922. Special damages include such items as:

> [L]oss of vendibility or value of the disparaged property…the litigation expenses incurred in removing the effects of the slander…losses involving interest, either in the sense of losing interest due or being required to pay interest which should not have been due but for the slander…losses involving the value of a leasehold interest…denial of rents due under a lease or by reason of preventing the entering into of a lease, and to other miscellaneous losses.
>
> Rite Aid, 298 Md. at 624; Annot., 4 A.L.R. 4th 537-539; 50 Am.Jur.2d, *Libel and Slander* §550; Restatement of Torts, Second §633; 7 A.L.R. 4th 1219 (1981).

Plaintiff does not identify any damage to his property interest, any inability to transact on the property, or any other special damage whatsoever. Plaintiff's frustration at receiving allegedly inaccurate bills is not a special damage and those bills, whether accurate or not, do not slander the title to his property.

It is not clear from the Complaint what SLS did that allegedly slandered the Plaintiff's title. There is no allegation that SLS published anything about Plaintiff's Property to a third party. There is no explanation of how the Plaintiff's title was disparaged. Perhaps most importantly, Plaintiff has not identified any special damages arising from the alleged slander. There is no allegation that Plaintiff tried to sell the Property, refinance, or do anything else that he was unable to do because of anything SLS did or said. Plaintiff has failed to plead any of the elements of slander of title and that claim must be dismissed.

**V.      CONCLUSION**.

The Plaintiff has failed to adequately plead any of the causes of action identified in his

Complaint.  As such, the Complaint must be dismissed, with prejudice.


                              Respectfully submitted,

                              MCNAMEE, HOSEA, JERNIGAN, KIM
                              GREENAN & LYNCH, P.A.


                               /s/   Aaron D. Neal                      _
                              Aaron D. Neal – Bar No. 79692
                              6411 Ivy Lane, Suite 200
                              Greenbelt, Maryland 20770
                              aneal@mhlawyers.com
                              Tel.    301-441-2420
                              Fax     301-982-9450

                              *Attorneys for SLS*


<u>**Certificate of Service**</u>

I hereby certify that on this 23rd day of December, 2013, copies of the foregoing paper

were filed via ECF and served via first class mail on:

John W. Bell, Esq.
Law Firm of John Bell
5631-C Burke Center Parkway
Burke, Virginia 22015


                                ____/s/_____ _
                              Aaron D. Neal